# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ANDREW ACOSTA**
        Petitioner,

    v.                               **Case No. 11-C-1171**
                                          **(Criminal Case No. 98-CR-104)**

**UNITED STATES OF AMERICA**
        Respondent.

## RULE 4 ORDER

Pursuant to 28 U.S.C. § 2255, petitioner Andrew Acosta moves to vacate his life sentence for racketeering and related offenses arising out of his involvement with the Latin Kings street gang. For the reasons that follow, I deny the motion and dismiss the action.

## I. BACKGROUND

A jury convicted petitioner of racketeering, 18 U.S.C. § 1962(c), racketeering conspiracy, 18 U.S.C. § 1962(d), conspiracy to distribute controlled substances, 21 U.S.C. § 846, and possession with intent to distribute marijuana, 21 U.S.C. § 841. The jury specifically found that petitioner committed several racketeering acts, including conspiracy to murder Angelique Morales (act 8a), murdering Angelique Morales (act 8b), attempting to murder Jennifer Burzynski (act 8c), possession with intent to distribute marijuana (act 30), and conspiracy to distribute controlled substances (act 60). On March 22, 2001, I sentenced petitioner to life in prison under the then-mandatory sentencing guidelines.

On direct appeal, petitioner argued that the government failed to prove that the Latin Kings were a single, ongoing enterprise, or that racketeering acts 8a, 8b, and 8c were

connected to the enterprise. He also argued that his sentence was unconstitutional under Blakely v. Washington, 542 U.S. 296 (2004).

The court of appeals rejected petitioner's challenges to the sufficiency of the evidence. Regarding the racketeering acts argument, the court, after discussing the facts in some detail, held that:

> An argument that this evidence was insufficient to tie Racketeering Act 8 to the Latin Kings enterprise borders on the frivolous. The jury heard testimony from numerous cooperating Latin Kings members that when someone "disrespected" the Latin Kings, members were obliged to respond with violence ranging from beatings to shootings. If they failed to respond to signs of disrespect with whatever violent means they had available at the time, they faced punishment ranging from fines to beatings at the next Latin Kings meeting. Morales disrespected the Latin Kings in a very public way when she threw the crown down on stage at a Cypress Hill concert and when she drove MLDs into Latin Kings neighborhoods to point out and shoot at houses. Indeed, Acosta told Morales at the concert that he would kill her. The Latin Kings discussed their hatred of Morales at a meeting. Indeed, Morales' last words, in dramatic fashion, tied what was about to happen to the incident at the Cypress Hill concert. She knew this was the Latin King who had "charged [her] up" at the concert after her purportedly disrespectful hand gesture. That Martinez may have told Acosta to "leave it alone," is of little moment; his actions in staying at the scene and providing Acosta with transportation spoke louder than his words. The Manifesto required that Martinez not "stand idle when another King is in need of assistance," and he did not stand idle. He provided Acosta a means of escape from the scene of the crime, disposal of the gun, and legal assistance. There was some evidence presented that the gun used was a Nation gun, which meant that only the Inca could authorize its use. The jury was entitled to infer that Martinez, who was then the Inca, authorized the shooting. The jury was also free to infer that Acosta shot Burzynski in an attempt to eliminate any witnesses to the murder of Angelique Morales, thus tying her attempted murder to the conduct of the enterprise. The defendants' argument amounts to a claim that Acosta was in a rage over the fight with his girlfriend and that he was indulging his personal rage rather than conducting Latin Kings business when he murdered Morales. The jury rejected that theory and instead concluded that the murder of Angelique Morales was sufficiently connected to the affairs of the enterprise. The use of Racketeering Act 8 at sentencing was thus entirely appropriate.

United States v. Olson, 450 F.3d 655, 671 (7th Cir. 2006).

On the sentencing claim, the court of appeals found that petitioner had preserved a

2

Blakely/Booker type objection and accordingly remanded the case for re-sentencing under Booker's advisory guideline regime. Id. at 683. On remand, after considering the factors set forth in 18 U.S.C. § 3553(a), I again imposed a life sentence. Petitioner appealed, but the Seventh Circuit dismissed the appeal as frivolous. United States v. Acosta, 314 Fed. Appx. 863 (7th Cir. 2008).

On December 27, 2011, petitioner filed the instant motion under § 2255, arguing that the government unlawfully charged him with the murder of Morales and attempted murder of Burzynski in connection with the RICO counts, after he had previously been acquitted of those crimes in state court. He further argues that there was no federal jurisdiction to prosecute him for these acts, which had no connection to interstate commerce. He contends that he could not have raised these arguments previously because, prior to the issuance of the decision in Bond v. United States, 131 S. Ct. 2355 (2011), individuals lacked standing to make Tenth Amendment claims. He asks me to vacate predicate acts 8a, 8b, and 8c, and re-sentence him accordingly.

## II. SECTION 2255

Section 2255 permits a federal prisoner to attack his sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." Almonacid v. United States, 476 F.3d 518, 521 (7th Cir. 2007). Consequently, such relief is appropriate only for errors of law that are jurisdictional, constitutional, or constitute

3

a fundamental defect inherently resulting in a complete miscarriage of justice. Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004). Further, because § 2255 does not serve as a substitute for or do-over of a direct appeal, see Varela v. United States, 481 F.3d 932, 935 (7th Cir. 2007), claims previously raised and rejected on appeal are barred from collateral review absent some good reason for reexamination, and claims omitted on appeal may be considered on collateral review only if the petitioner can show good cause for failing to raise the issue previously and actual prejudice based on the alleged error, see, e .g., Fuller v. United States, 398 F.3d 644, 648 (7th Cir. 2005). Finally, § 2255 actions are subject to a one year statute of limitation, measured from the latest of (1) the date on which the judgment of conviction became final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States was removed; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

Pursuant to Rule 4 of the Rules Governing § 2255 Proceedings, the district court must conduct a preliminary review of such motions:

> If it plainly appears from the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States Attorney to file an answer, motion or other response . . . .

Rule 4(b), Rules Governing § 2255 Proceedings. Under this screening Rule, the district court may dismiss a § 2255 action without holding a hearing or requiring the government to respond if the motion and the files and records of the case conclusively show that the petitioner is

entitled to no relief. Gallo-Vasquez v. United States, 402 F.3d 793, 797 (7th Cir. 2005).

## III. DISCUSSION

The amended judgment pursuant to which petitioner is now serving a sentence became final in 2008.[1] As petitioner acknowledges, he filed the instant motion more than one year later. However, he argues that he may avail himself of § 2255(f)(3) based on the Supreme Court's decision in Bond, which came down on June 16, 2011.

As noted above, § 2255(f)(3) grants a fresh one year filing period running from the date on which the Supreme Court initially recognizes some new constitutional right. But the Tenth Amendment "right" upon which petitioner relies cannot be considered new; such a claim was available in this circuit at the time of petitioner's trial and direct appeal. See Gillespie v. Indianapolis, 185 F.3d 693, 703-04 (7th Cir. 1999) (holding that individuals have Tenth Amendment standing), abrogated on other grounds by District of Columbia v. Heller, 554 U.S. 570 (2008); see also Bond, 131 S. Ct. at 2361 (cataloging the positions of the lower federal courts, and noting that the Seventh Circuit stood opposed to the decision below, which the Court reversed). Therefore, his motion is untimely.[2]

For similar reasons, petitioner's claim is procedurally defaulted. See United States v. Frady, 456 U.S. 152, 167-168 (1982) (holding that claims not properly raised directly may be

---

[1] The court of appeals dismissed petitioner's direct appeal on January 4, 2008, and denied rehearing and rehearing en banc on July 15, 2008. Petitioner did not file a petition for certiorari, meaning his conviction became final 90 days after the court of appeals entered judgment. See Clay v. United States, 537 U.S. 522 (2003).

[2] A district court may sua sponte dismiss a habeas petition as untimely, so long as the petitioner gets a fair chance to present his position. See Day v. McDonough, 547 U.S. 198 (2006). Here, petitioner raised and fully briefed the timeliness issue in his supporting memorandum.

5

considered on collateral review only if the prisoner can show good "cause" for the default and actual "prejudice" based on the alleged error). To the extent that petitioner argues cause based on the alleged unavailability of a Tenth Amendment claim, his argument fails given the Seventh Circuit's holding in Gillespie. Moreover, because his claim lacks any merit, petitioner cannot show prejudice.[3]

Petitioner argues that predicate acts 8a, 8b, and 8c were local in nature, unconnected to interstate commerce or other federal interest. However, the jury found that these acts were connected to the affairs of the Latin Kings "enterprise," the activities of which affected interstate commerce, a finding affirmed on direct appeal. See Olson, 450 F.3d at 671. Petitioner attempts to argue that this finding was wrong, but § 2255 does not permit a prisoner to rehash the evidence. See Bateman v. United States, 875 F.2d 1304, 1306-07 (7th Cir.1989) (stating that "the question of guilt or innocence is not cognizable on a Section 2255 motion"). Further, the Seventh Circuit on direct appeal specifically considered and rejected petitioner's contention that he acted contrary to the wishes of the gang's "Inca," severing any connection between the enterprise and the shootings. See Olson, 450 F.3d at 671 ("That Martinez may have told Acosta to 'leave it alone,' is of little moment; his actions in staying at the scene and providing Acosta with transportation spoke louder than his words."). He provides no basis for revisiting that determination.

Petitioner claims that the federal government lacked authority under the Commerce Clause to charge him with predicate acts 8a, 8b, and 8c, as these acts were not economic in

---

[3] As I discuss below, petitioner's argument appeals to the Commerce and Double Jeopardy Clauses as much as the Tenth Amendment. He provides no reason why he could not have previously raised claims under the former provisions.

6

nature. See United States v. Morrison, 529 U.S. 598, 617 (2000) ("We accordingly reject the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce."). However, petitioner ignores the fact that he was not simply charged with a local murder or attempted murder; rather, he was charged with participating in the conduct of the affairs of an enterprise, the activities of which affected interstate commerce, through a pattern of racketeering activity. It is the enterprise that provides the link to interstate commerce, not the particular racketeering acts, which may include what would otherwise be considered local crimes. See 18 U.S.C. § 1961; see also United States v. Kehoe, 310 F.3d 579, 588 (8th Cir. 2002) (explaining that RICO criminalizes the furthering of the enterprise, not the predicate acts).

Petitioner cites United States v. Wang, 222 F.3d 234 (6th Cir. 2000), for the proposition that where the offense is directed at a private individual rather than a business engaged in interstate commerce, the government must show more than a de minimis effect on interstate commerce. However, Wang was a Hobbs Act case, not a RICO prosecution. Petitioner also cites United States v. Garcia, 143 F. Supp. 2d 791 (E.D. Mich. 2000), in which the court dismissed a RICO indictment based on an insufficient connection to commerce. However, in Garcia the predicate acts forming the basis for the RICO counts were "based solely" on violations of state murder statutes. The predicate acts did "not include other allegations such as robbery, hijacking, car theft, drug trafficking, or extortion, which are typically present in RICO prosecutions and which are more economic in character." Id. at 797. In the present case, conversely, the Latin Kings also engaged in drug trafficking. Petitioner argues that acts 8a, 8b, and 8c were isolated from the other predicate acts, but he cites no evidence supporting this claim, which in any event is contrary to the jury's finding regarding a "pattern of racketeering

7

activity."

Finally, petitioner argues that the government violated the Tenth Amendment and the Double Jeopardy Clause by disregarding the state court's acquittal on the Morales murder. However, the Seventh Circuit has held that the use of a murder charge, of which the defendant had previously been acquitted in state court, as a predicate offense supporting a federal racketeering prosecution does not violate double jeopardy. United States v. Farmer, 924 F.2d 647, 649 (7th Cir. 1991) ("It is a fundamental principle of our dual criminal systems that even criminal acts which form the basis of a prior state acquittal can be used as predicate acts in a federal proceeding without violating double jeopardy.").[4] And "courts have held that a statute's mere allusion to state crimes does not violate the Tenth Amendment because the reference does not supplant state crimes, but instead identifies the type of conduct that serves as a predicate to prosecution under RICO." United States v. Dhingra, 371 F.3d 557, 564 (9th Cir. 2004).

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that petitioner's § 2255 motion is **DENIED**, and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2255 petitioner. In order to obtain a COA, the petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The

---

[4] Petitioner cites a district court case from another circuit reaching a contrary result, United States v. Louie, 625 F. Supp. 1327 (S.D.N.Y. 1985), but I must follow Seventh Circuit law.

8

standard for making a "substantial showing" is whether reasonable jurists could debate whether the motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where the district court has rejected the petitioner's constitutional claims on the merits, "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. When the district court denies a motion on procedural grounds a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. Id.; see also Young v. United States, 523 F.3d 717 (7th Cir. 2008). For the reasons stated above, jurists of reason would not find debatable either my procedural rulings regarding timeliness/procedural default or my conclusion on the merits. Therefore, I decline to issue a COA.

    Dated at Milwaukee, Wisconsin, this 20th day of January, 2012.

                              /s Lynn Adelman

                              _____
                              LYNN ADELMAN
                              District Judge